IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA )
)
)
v. ) Case No. 1:21-mj-224
)
DEAN EDWARD CHEVES, )
)
Defendant. )

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Kyle Michael Harding, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Diplomatic Security Service of the United States Department of State ("DSS") and have been so employed since in or around August 2010. I am currently assigned as a criminal investigator in DSS Office of Special Investigations, where I conduct a variety of investigations pertaining to violations of federal criminal laws, to include criminal fraud, violent crime, sexual violence, sexual assault, domestic violence, and child abuse. I have received training from DSS regarding the investigation of federal criminal violations, including criminal violations under Title 18 of the United States Code, as well as other violations of laws affecting the programs and functions of the U.S. Department of State. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia and I also hold a bachelor's degree from the University of California.

2. As a special agent of the DSS, I am authorized under 22 U.S.C. § 2709(a)(1)(C) to investigate federal offenses committed within the Special Maritime and Territorial Jurisdiction of the United States, as defined under section 7(9) of Title 18. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the

1

authority of the United States. I am a "federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am engaged in enforcing federal criminal law and am authorized by the Attorney General to request a search warrant, among other things.

3. As a federal agent, I am authorized to investigate violations of the laws of the United States. Since 2010, I have investigated criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, advertisement, presentation, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256).

4. This Affidavit is submitted in support of a criminal complaint and arrest warrant charging Dean Edward Cheves ("Cheves") with engaging in illicit sexual conduct in a foreign place, in violation of Title 18 U.S.C § 2423(c). For the reasons set forth below, I submit that probable cause exists to believe that in or around February 2021, Cheves engaged in illicit sex acts after he traveled to, and was residing in, the Philippines.

5. The statements contained in this Affidavit are based on my experience and background as a Special Agent working in the area of child exploitation and child pornography, on information provided by other law enforcement agents, and on my review of reports and records. I have not set forth every fact resulting from the investigation; rather I have set forth a summary of the investigation to date to establish probable cause.

2

## STATUTORY AUTHORITY AND DEFINITIONS

6. 18 U.S.C. § 2423(c) prohibits any United States citizen or alien admitted for permanent residence who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, from engaging in any illicit sexual conduct with another person.

7. The term "illicit sexual conduct," as defined in 18 U.S.C. § 2423(f)(3), includes production of child pornography (as defined in 18 U.S.C. § 2256(8)).

8. The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.

9. The term "minor," as defined in 18 U.S.C. § 2256(1), means any person under the age of 18 years.

10. The term "sexually explicit conduct," as defined in 18 U.S.C. § 2256(2)(A)(i)–(v), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

11. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data that is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

12. Pursuant to 18 U.S.C. § 3238, venue for offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

13. The government anticipates Cheves will be arrested in or first brought to the Eastern District of Virginia, thereby conferring venue to the Eastern District of Virginia.

## INVESTIGATION OF DEAN CHEVES

14. On or about February 25, 2021, members of the U.S. Embassy Manila Regional Security Office ("RSO") were notified of allegations that Cheves, a United States citizen and member of the Foreign Service of the United States, serving at the U.S. Embassy in Manila, Philippines, engaged in sexual activity with and produced videos of himself engaging in sex acts with a 16-year-old, "Minor 1."[1]

15. According to U.S. Department of State records, Cheves was assigned to the U.S. Embassy in Manila from August 2017 until March 2021. Cheves most recently traveled from the United States to Manila, Philippines, on or about September 21, 2019. Additionally, Cheves was previously posted to the Philippines as an employee of the U.S. Department of State, and member of the U.S. Foreign Service, from 1996-1999 and 2001-2007.

---

[1] The full name and identity of "Minor 1" is known to the affiant; a generic identifier is used here to protect the victim's privacy.

4

16. On or about February 26, 2021, a police investigator from the Philippine National Police ("PNP") interviewed Minor 1 about these allegations. The PNP verified Minor 1's identity and confirmed that she was 16 years old by examining her birth certificate and Philippine passport. During the interview, Minor 1 reported that she met Cheves online through an internet-based dating application ("Dating Application") and subsequently began communicating with Cheves using an internet-based encrypted messaging platform ("Encrypted Messaging Platform").[2] Minor 1 said that she initially stated that was 18 years old on her account on the Dating Application, but she told Cheves she was 16 years old after he told her "that he was into younger girls." Minor 1 told the PNP investigator that Cheves's username on the Encrypted Messaging Platform was "Deca," and she would frequently communicate with Cheves using this platform.

17. Minor 1 told the PNP investigator that she had met Cheves in person for the first time on or about February 12, 2021, when he picked her up in his vehicle in Manila. Minor 1 said that when she got into CHEVES's vehicle, he immediately asked her, "do you remember me?"[3] Cheves then asked the victim to engage in oral sex on him while he drove around in his vehicle.

---

[2] The identities of both the Dating Application and the Encrypted Messaging Platform are known to law enforcement. The Encrypted Messaging Platform is a widely used video and messaging platform, which incorporates end-to-end encryption and allows for end-to-end encrypted secret chats; messages sent within a secret chat can be accessed only on the device upon which the secret chat was initiated and the device upon which the secret chat was accepted, and cannot be accessed on other devices. Based upon my training, experience, and conversations with other law enforcement officers, I know that messaging platforms such as the Encrypted Messaging Platform that incorporate end-to-end encryption protocols are often deliberately sought out and utilized by criminals to prevent law enforcement from uncovering evidence of their crimes. Additionally, based upon my training, experience, and conversations with other law enforcement officers, I know that the Dating Application has been used by sex offenders seeking to meet underage victims.

[3] Minor 1 said that she later recalled that she used to talk to Cheves online when she was 12 or 13 years old (*i.e.*, around 2017-2018). Minor 1 said that she recalled sending him nude photos of herself around that time, but she could not recall what application or social media account she used to send him the photos.

Minor 1 said that Cheves used a cellular phone to make a video of himself engaging in this sex act with her; Minor 1 was not initially aware that Cheves made the video, but she later became aware of it.

18. Minor 1 told the PNP investigator that she met Cheves again on or about February 22, 2021, and that Cheves picked her up in his vehicle and took her to a nearby motel. Minor 1 said that Cheves had vaginal intercourse with her while they were in the room and that he filmed it without her consent and refused to delete it afterwards when she asked him to. She described being "scared of" Cheves and fearful that he would share her images and videos online and explained that she therefore "continued to play along" so she did not "make him angry."

19. During the interview, Minor 1 gave consent to the PNP to forensically extract data from her cellular telephone. The PNP also took pictures of a conversation between Minor 1 and "Deca" (*i.e.*, Cheves) that was on the Encrypted Messaging Platform on Minor 1's phone. A copy of the data extracted from Minor 1's cellular telephone and the pictures of the conversation were provided to RSO personnel at the U.S. Embassy in Manila, and to the affiant. Included in the pictures of the messages between Cheves and Minor 1 were references to the sexual acts Cheves had engaged in with Minor 1 and references to Cheves's recording of the sexual activity. For example, Cheves said during a conversation discussing sexual acts and interests, "Btw I moved those vids. Only three. Where do you want them baby[?]" Minor 1 responded that he could send them "here" to which Cheves replied, "Ok baby. The slo mo one is fun. I fixed the exposure . . . ."

20. An initial review of the pictures of this conversation also revealed that "Deca" (*i.e.*, Cheves) sent Minor 1 several images he had taken when having sex with Minor 1. The first image shows an erect penis penetrating the genitalia of a female. The second image shows the lower pubic area of what appears to be a male and the lower abdominal area of what appears to be a

female; both the male and female are nude in the photo, and the photo appears to show the male engaging in vaginal sex with the female. The third image appears to be an edited version of the first image. These images appear to be 9-second-long video clips. After sending the images to Minor 1, Cheves told her in a message on the Encrypted Messaging Platform that, "We should do that again with better light."

21. Several pictures of the conversation on the Encrypted Messaging Platform conversation recovered from Minor 1's cellular telephone by the PNP and provided to the affiant show Minor 1 telling Cheves that she was a minor and Cheves's acknowledgement that Minor 1 was underage. For example, when Minor 1 told Cheves that she needed cash, he responded, "You shoulda let me give you the cash in my pocket yesterday. I offered. A lady always needs a little reserve. Although I don't condone corruption of minors [emoji]."

22. Review of Minor 1's cellular telephone confirmed that on or about February 14, 2021, Minor 1 received an electronic money transfer for 3000 PHP (Philippine Pesos), approximately $60.00 U.S. Dollars, from Cheves. The transfer used an application that allows users to, among other things, send and receive payments with mobile devices. A screenshot of the money transfer was provided to the affiant by the PNP. The screenshot says, "You have received PHP 3000.00 . . . from DEAN EDWARD CHEVES." The message included Cheves's local Philippine phone number and the transfer was accompanied by a message that read "Happy V Da" [sic].

23. On or about March 3, 2021, a Child Forensic Interviewer, employed by the U.S. Government, conducted a remote interview with Minor 1 by video conference. During this Child Forensic Interview ("CFI"), Minor 1 affirmed that Cheves had two sexual encounters with her, as described above. Minor 1 further disclosed during the CFI that the second encounter also involved

7

Cheves engaging in oral sex on her. During this encounter, Minor 1 said that she called Cheves a pedophile, and Cheves responded by slapping her and shouting at her to "shut the fuck up." Minor 1 further disclosed that she was scared of Cheves, and that he was constantly telling her that they "couldn't let this get out." Minor 1 further stated during the CFI that Cheves showed her the video of her engaging in oral sex on him, and discussed how it would look on a pornography website. Minor 1 asked Cheves to delete the video, but he said he did not want to delete it. Minor 1 additionally said that she asked Cheves to delete the videos he made while having sex with her, and that he told Minor 1 to "keep quiet" and he would not share the videos he made. Minor 1 further reported during the CFI that Cheves had two phones and he told her that the videos were taken on his work phone.

24. During the CFI, Minor 1 described Cheves as "an older man, with white hair who was wearing a cap [baseball cap]," when he picked her up in his vehicle, which she described as a "black SUV" with a diplomatic license plate. Minor 1 was shown a series of photographs during and immediately after the interview, and she positively identified Cheves.

25. Additionally, Minor 1 disclosed that Cheves told her details about a sexual relationship he had with a 14-year-old female when he lived in Brazil. Cheves told Minor 1 that he made video(s) of himself while having sex with the 14-year-old female, but Minor 1 never saw these videos.

26. The affiant searched U.S. Department of State employee records and learned that Cheves served as the information officer at the U.S. Embassy in Brasilia, Brazil, from July 2011 through October 2014.

27. On or about March 10, 2021, your affiant obtained a Rule 41(b)(5) search warrant in the U.S. District Court for the District of Columbia authorizing the search and seizure of

8

Cheves's property, including electronic devices, in the Philippines (21-SW-70). On March 12, 2021, the search warrant was executed at Cheves's embassy-provided residence and government office in Manila, Philippines. Over 100 items of evidence were seized, including approximately 80 electronic devices.

28. Forensic analysis of Cheves's seized iPhone 8, which was a personal phone (not a State Department issued phone), revealed 1600 "contacts" in the phone, including an entry for Minor 1. The contact entry for Minor 1 is labeled with one of Minor 1's social media usernames and says "18-." The contact entry also includes a "notes section" that includes Minor 1's date of birth, nickname and last name, and high school grade and graduation year. The "notes" continue with a list of nicknames such as "[b]aby girl." The forensic analysis of Cheves's iPhone 8 also revealed portions of the same Encrypted Messaging Platform conversations between Cheves and Minor 1 provided to RSO by the PNP.

29. Additional contacts who appear to be minors are also contained within the iPhone 8 along with other information about the contact, such as a dates of birth (which indicate that Cheves's knows the contacts to be minors), account information for the electronic money transfer application described above, email address, address, and username on the Encrypted Messaging Platform. For multiple contacts, Cheves used the notes section to catalog electronic payments to the contact using the electronic money transfer application.

30. The search of the iPhone 8 also revealed a list that includes multiple entries detailing various payments made using the electronic money transfer application.

31. During the March 12, 2021 search warrant, agents recovered a white paper envelope from Cheves's personally owned vehicle that contained 34,500 Philippine pesos. Also

located in the vehicle were condoms, personal lubricant, and several pills packaged in blister packaging labeled as "Sildenafil Citrate NIZAGARA 50" (*i.e.*, erectile-dysfunction medication).

32. Forensic analysis was also performed on Cheves's iPhone 11, which was his State Department issued work phone. The forensic analysis revealed a video with a created date of February 12, 2021, which depicts a female engaging in oral sex on a penis in a car.[4] This video matches the description provided by Minor 1 of the video Cheves made of Minor 1 engaging in oral sex on him in his vehicle on February 12, 2021. Also located on Cheves's iPhone 11 were three videos which all appear to have been created on the same day, February 22, 2021. One video depicts a female engaging in oral sex on an erect penis. During this video, the female can be observed using a cell phone to record a video of this, as well. I have previously watched Minor 1's video recorded CFI interview, based on that I recognize the female in this video as Minor 1. Another video depicts a male engaging in penile-vaginal sexual intercourse on a female. The third video depicts a male, laying on his back, penetrating a rear-facing female's genitalia with his erect penis. All three videos appear to depict the same two people in the same location. These videos match the description provided by Minor 1 of the video Cheves made of sex acts between the two in a Manila hotel on February 22, 2021. The metadata for these videos indicates the videos were made using an iPhone 11. These videos are also consistent with the images that "Deca" sent to Minor 1 in the conversation on the Encrypted Messaging Platform, as seen on Minor 1's phone described above. I also found a video on the seized iPhone 11 in which the user was recording a video playing on another cell phone. The video playing on the other cell phone appeared to be created using a social media application that allows users to send pictures and videos to others. One of the main features of that application is that the pictures and videos typically

---

4 In this video Minor 1 appears to see the video recording being made.

disappear after they are watched. The video was received from a username associated with Minor 1. The video appears to be the recording that Minor 1 took during the video created on February 22, 2021 that was described above. Thus, it appears that Cheves took a recording of the video playing on the social media application in order to save it.

33. Following the execution of the residential search warrant, Cheves returned to the United States on March 12, 2021. Upon his return he initially resided in the Eastern District of Virginia, where he owns property.

## CONCLUSION

34. Based on the above information, I respectfully submit that there is probable cause to believe that in or around February 2021, in the Philippines, Cheves engaged in illicit sexual conduct in a foreign place in violation of 18 U.S.C. § 2423(c). Therefore, I respectfully request that a criminal complaint and arrest warrant be issued for Dean Edward Cheves.

Respectfully submitted,

Kyle Michael Harding, Special Agent
Diplomatic Security Service

Subscribed and sworn to in accordance with Fed. R. Crim. P. 4.1 by telephone on July 2, 2021:

John F. Anderson
Digitally signed by John F. Anderson
Date: 2021.07.02 10:33:56 -04'00'

The Honorable John F. Anderson
United States Magistrate Judge