IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:21-CR-177 |
| v. | Hon. Claude M. Hilton |
| DEAN EDWARD CHEVES, | |
| Defendant. | |

**DEFENDANT'S MOTION TO DISMISS**

Defendant Dean Cheves, by and through undersigned counsel, respectfully moves this Court to dismiss Count 1 of the Indictment in this matter charging him with engaging in sexual conduct in a foreign place in violation of 18 U.S.C. § 2423(c). The statute under which Mr. Cheves is charged in Count 1 is unconstitutional as it exceeds the power of Congress. The power of Congress, including under the Foreign Commerce Clause and Necessary and Proper Clause, does not allow the criminalization of non-commercial sexual conduct that occurs in a foreign country. The charge also violates Mr. Cheves' due process rights, as it is an improper extraterritorial application of criminal jurisdiction over conduct occurring outside of the United States.

Mr. Cheves recognizes and concedes that these arguments have been raised in this Circuit. as well as others, and the statute at issue has been upheld as constitutional. *See*, *e.g.*, *United States v. Bollinger*, 966 F.Supp. 2d 568 (4th Cir. 2013), *United States v. Park,* 938 F.3d 354 (D.C. Cir. 2019). These arguments are presented in a good faith attempt to advocate for a change in the controlling law.

## Factual Background

Mr. Cheves spent most of his career as a foreign service officer with the United States Department of State. Prior to his retirement in September 2021, he had been stationed abroad in numerous foreign nations, including Brazil and the Philippines. As a foreign service officer, Mr. Cheves focused on printing operations and his last assignment involved running a printing operation near Manila, Philippines. He was assigned to the U.S. Embassy in Manila from August 2017 until March 2021, and he returned to the United States when this matter commenced.

In or around February 2021, the U.S. Embassy Manila Regional Security Office became aware of allegations that Mr. Cheves had engaged in illicit sexual conduct with a minor in the Philippines. The complainant reported to the Philippine National Police that she had met Mr. Cheves through an online dating application where she had initially claimed to be 18 years old. She told the police that she and Mr. Cheves engaged in sexual conduct on several occasions, and that they had filmed their engagements. The government does not contend that Mr. Cheves paid the complainant to engage in the alleged sexual conduct. The government also does not allege that Mr. Cheves travelled to the Philippines to engage in illicit sexual conduct.

In March 2021, a search warrant was obtained to search and seize Mr. Cheves' personal property, including electronic devices, and to search his residence and office in Manila, Philippines. After the search of his Manila residence, Mr. Cheves returned to the United States on March 12, 2021.

**Procedural History**

On July 2, 2021, the government filed a Criminal Complaint charging Mr. Cheves with engaging in illicit sexual conduct in a foreign place in violation of 18 U.S.C. § 2423(c). U.S. Magistrate Judge John F. Anderson issued an arrest warrant and Mr. Cheves turned himself in on July 6, 2021. Following a contested detention hearing on July 7, 2021, Mr. Cheves was granted pretrial release. On August 3, 2021, Mr. Cheves was indicted and charged with engaging in illicit sexual conduct in a foreign place in violation of 18 U.S.C. § 2423(c) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(A). The parties are scheduled to appear for a hearing on pretrial motions on December 17, 2021.

## LEGAL BACKGROUND

A. **The PROTECT ACT and 18 U.S.C. § 2423**

18 U.S.C. § 2423 codifies The Prosecuting Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"). Under this statute, it is prohibited for "any United States citizen or alien admitted for permanent residence who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country" to engage "in any illicit sexual conduct with another person." 18 U.S.C. § 2423(c). "Illicit sexual conduct" is defined to include "production of child pornography." 18 U.S.C. § 2423(f)(3).

It is our understanding that Congress relied upon the Foreign Commerce Clause as the basis for its authority with respect to this statute. *See,* U.S. Const. art. 1 § 8, cl. 1, 3 ("Congress shall have Power…to regulate Commerce with foreign Nations…). The PROTECT Act was amended in 2013 to insert the language "or resides, either temporarily or permanently, in a foreign country." 18 U.S.C. § 2423(c). Through this amendment, the statute criminalizes the conduct of individuals who reside abroad, even if they do not engage in foreign commerce.

# ARGUMENT

Mr. Cheves moves to dismiss the indictment because the statute under which he is indicted, 18 U.S.C. § 2423(c), exceeds Congress' authority to criminalize conduct. Congress acted beyond the enumerated powers given to it under the Constitution when it enacted the PROTECT Act amendments in 2013. Congress may only pass a law if it is "based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000); U.S. Const. art. 1. When the PROTECT ACT was originally passed in 2003, its purpose was to address the sex tourism industry. It was amended in 2013 and Congress added the clause "or resides, either temporarily or permanently, in a foreign country," which removed the "intent" element of the statute. Pub. L. No. 113-4 § 1211, 127 Stat. 54 (2013); H.R. Rep. No. 108-66, at 51-52 (2003). As amended, the statute criminalizes conduct that occurs wholly within another country, including conduct that occurs after or unrelated to any traveling in foreign commerce takes place. Because the Constitution does not give Congress authority to prohibit the conduct at issue, Count 1 in the Indictment must be dismissed.

**I.   The Foreign Commerce Clause cannot reach non-commercial sexual conduct occurring wholly outside of the United States and involving no channels or instrumentalities of commerce.**

Congress exceeded its authority under the Foreign Commerce Clause by criminalizing non-commercial illicit sexual conduct. *See,* U.S. Const. art 1. Sec. 8; 18 U.S.C. § 2423(c). Mr. Cheves challenges this statute as both facially unconstitutional and as applied to this specific case. Congress has the authority to criminalize conduct only through the powers given to it by

the Constitution. The "constitution informs us" that the power of the Commerce Clause extends to commerce "with foreign nations, and among the several States, and with the Indian tribes." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 193 (1824). This power is limited to the "commercial intercourse between the United States and foreign nations." *Id.*

There are "three broad categories of activity that Congress may regulate under its commerce power." *United States v. Lopez*, 514 U.S. 549, 558-559 (1995). They include the power to regulate the use of channels of interstate commerce, the instrumentalities of interstate commerce, and those activities having a substantial relation to interstate commerce. *Id.* The Commerce Clause does not distinguish between interstate commerce and foreign commerce. *See, Gibbons v. Ogden* at 194. ("commerce, as the word is used in the constitution, is a unit…[I]n its application to foreign nations, it must carry the same meaning throughout the sentence…and remain a unit…").

Mr. Cheves is charged with engaging in illicit sexual conduct while residing in the Philippines under 18 U.S.C. §2423(c). Specifically, Mr. Cheves is being prosecuted under 2423(f)(3), which defines "illicit sexual conduct" to include "production of child pornography." Notably, Mr. Cheves is not charged with §2423(f)(2), which defines "illicit sexual conduct" as "any commercial sex act…with a person under 18 years of age." This prosecution criminalizes non-commercial conduct that occurred in a foreign country, using no channels or instrumentalities of commerce, and had no relation to foreign commerce. As identified by the *Lopez* court, Congress is only authorized to regulate commerce if the activity regulated uses the channels of commerce or the instrumentalities of commerce, or has a substantial relation to commerce. *Lopez* 514 U.S. at 558-559. Any attempt by Congress to regulate commerce beyond the three categories stated in *Lopez* is unconstitutional. Under the factors identified in *Lopez*, 18

5

U.S.C. §2423(c) is not an authorized use of Congress's power to regulate foreign commerce. It attempts to regulate conduct that has no nexus to commerce and is unconstitutional.

### A. Channels of Foreign Commerce

The statute at issue does not regulate any channel of commerce. It does not regulate any channels of foreign commerce and has no relation to the channels of foreign commerce. Consequently, this statute is not an authorized use of Congress's power to regulate the channels of foreign commerce. 18 U.S.C. § 2423(c) criminalizes conduct that occurs in a foreign country and does not regulate any channel of foreign commerce. This statute does not require that the conduct involve a channel of foreign commerce. *Compare* § 2423(b) (criminalizing traveling in foreign commerce with the intent to engage in illicit sexual conduct). Indeed, §2423(c) could criminalize the conduct of a U.S. citizen born abroad who has never left the foreign country, let alone engaged in foreign commerce. Similarly, as foreign commerce runs in both directions, such a statute could criminalize the conduct of a person who has traveled in foreign commerce and has since returned to the U.S.

If Congress has the authority to criminalize conduct that occurrs in a foreign country simply because it was the conduct of a U.S. citizen or permanent resident, then under that argument, Congress could criminalize any conduct of U.S. citizens and permanent residents while abroad. The statue does not include a requirement that the individual charges engage in any type of commerce. While it is a logical conclusion to think that a U.S. citizen that commits an act in a foreign nation engaged in foreign commerce in order to arrive in the locale, the statute does not have a connection between the alleged unlawful conduct and the foreign travel. Instead, the travel is incidental to the alleged conduct and has no relation to the conduct criminalized by

the statute. Incidental use of foreign commerce to travel and live abroad is insufficient to render this a valid exercise by Congress under the Commerce Clause.

### B. Instrumentalities of Foreign Commerce

Similar to the argument made above, 18 U.S.C. §2423(c) does not regulate any instrumentalities of foreign commerce. Rather, it criminalizes illicit sexual conduct, and not any mode of transportation. An instrumentality of commerce is the mode of transportation that serves "as the media for the movement of goods and persons" in commerce, such as railroads, highways, vehicles, and aircraft. 29 C.F.R. § 776.29. In order for this to form a valid basis of the constitutionality of the statute at issue, it would have to, in fact, regulate an instrumentality of foreign commerce. It does not.

### C. Substantial Effect on Foreign Commerce

18 U.S.C. §2423(c) also does not regulate any activity that has a substantial effect on foreign commerce. Mr. Cheves is accused of engaging in illicit sexual activity in a foreign country that was noncommercial in nature. Mr. Cheves was *not* charged under 2423(f)(2), which defines "illicit sexual conduct" to mean "any *commercial* sex act with a person under 18 years of age." (emphasis added). The conduct with which he is charged does not affect foreign commerce at all, let alone substantially. Noncommercial sex acts are neither commercial nor economic, and noncommercial sex is not an economic commodity. Consequently, there is no commercial market for noncommercial sex acts, and Congress therefore lacks authority to regulate such conduct.

Additionally, legislative history of the PROTECT Act and §2423(c) indicates that Congress was solely focused on commercial sex acts related to the sex tourism industry, prostitution, and child trafficking in enacting the law. *See* H.R. Rep. No. 108-66 (2003).

Congress did not make a single finding that was related to noncommercial sexual activity and foreign commerce. Here, Count 1 in the indictment alleges that Mr. Cheves engaged in noncommercial sexual conduct while stationed abroad as part of his employment in the Philippines. The conduct alleged has no effect on foreign commerce. The alleged conduct occurred as a local matter inside the Philippines and the law of the United States should not regulate such alleged acts[1]. As such, Congress does not have the authority to regulate.

> II. **The Necessary and Proper Clause and the Optional Protocol does not authorize 2324(c)**

Additionally, §2423(c) is not authorized under the Necessary and Proper Clause, as it is not within Congress' power to effectuate a treaty. Under the Constitution, Congress does have the power under the Necessary and Proper Clause to effectuate laws that implement treaties that the United States is a party to. U.S. Const. Art. I, § 8, Cl 18. The United States is a party to the Optional Protocol to the United States Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography ("Optional Protocol"). S. Treaty Doc. 106-37, 2171 U.N.T.S. 227. However, since §2423(c) criminalizes offenses that do not fall under this treaty, Congress does not have the authority to use the Necessary and Proper Clause to implement this statute.

The language of the Optional Protocol indicates that its purpose is to address the *commercial* sexual exploitation of children, and *commercial* sexual acts involving children such as the sale of children, child prostitution and commercial child pornography. The Optional Protocol does not address noncommercial sexual acts. As a result, the Necessary and Proper Clause does not apply

---

[1] Based on media reports, it appears that Mr. Cheves was charged in the Philippines related to the same allegations involving the same complainant. This development, if confirmed, would further support the position that it is the province of the Philippines, and not the United States, to investigate and prosecute conduct that occurs solely in the Philippines. This would also allow Mr. Cheves to present defense that may only exist under Filipino law.

here. Further, there is no constitutional basis under the Necessary and Proper Clause for criminalizing noncommercial sexual acts by a U.S. citizen living outside the U.S.

### III. Punishing Mr. Cheves' alleged conduct violates his due process rights

Enforcement of a "criminal statute having extraterritorial reach" must comply with due process. *United States v. Brehm*, 691 F.3d 547, 552 (4th Cir. 2012). To comply with due process, its required that there be "a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." *Id.* (citing *United States v. Davis,* 905 F.2d 245, 248-49 (9th Cir. 1990)).

"To the extent the nexus requirement serves as a proxy for due process, it addresses the broader concern of ensuring that 'a United States court will assert jurisdiction only over a defendant who should reasonably anticipate being haled into court in this country.'" *United States v. Ali*, 405 U.S. App. D.C. 279, 294 (2013) (citing *United States v. Klimavicius-Viloria,* 144 F.3d 1249, 1257 (9th Cir. 1998). Due process demands that an international treaty "provide global notice that certain generally condemned acts are subject to prosecution by any party to the treaty." *Ali,* 718 F.3d at 294.

There is no sufficient nexus between Mr. Cheves and the United States. While Mr. Cheves was employee of the United States government, his employment was fully within the borders of the Philippines. He lived and worked in the Philippines, and none of the alleged conduct with which he is charged with occurred within the borders of the U.S. Further, his alleged conduct involved no commercial activity or nexus to the U.S. Prosecuting Mr. Cheves for his noncommercial conduct is a violation the Due Process Clause.

**Conclusion**

The Commerce Clause does not give Congress the authority to regulate a person's noneconomic conduct in a foreign country, as it seeks to do under § 2423(c). Count I against Mr. Cheves must be dismissed because Congress acted beyond its constitutional authority in enacting 18 U.S.C. § 2423(c).

Respectfully Submitted,

/s/ *Marc Eisenstein*
Barry Coburn
Marc Eisenstein
Coburn & Greenbaum, PLLC
1710 Rhode Island Avenue, N.W.
Second Floor
Washington, DC 20036
Phone: (202) 643-9472
Fax: (866) 561-9712
barry@coburngreenbaum.com
marc@coburngreenbaum.com

*Counsel to Defendant Dean Cheves*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 15, 2021 a copy of the foregoing was filed with the Clerk of the Court and served on all counsel of record via ECF.

/s/
Marc Eisenstein