IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 1:21-CR-177 |
| v. | The Honorable Claude M. Hilton |
| DEAN EDWARD CHEVES, | Sentencing: March 17, 2023 |
| *Defendant*. | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The defendant met and sexually exploited two minors, using them to create pictures and videos of sexual abuse, all while he represented the United States as a Foreign Service Officer assigned to Manila, Philippines. The defendant met Minor 1 online and, knowing her age, engaged in sexual activity with her on two occasions, filming the sexual conduct on his government-issued cell phone during one of these encounters. The defendant also met Minor 2 online and induced her to record and send him sexually explicit pictures and videos of herself, including in exchange for money.

The defendant has pled guilty to two counts of engaging in illicit sexual conduct—production of child pornography—in foreign places, in violation of 18 U.S.C. § 2423(c) and (f)(3). The applicable guidelines range has been correctly calculated in the Presentence Investigation Report ("PSR") as the statutory maximum of 720 months' imprisonment. *See* Dkt. No. 71 (PSR), at ¶ 118. The United States recommends that the Court impose a significant sentence that is sufficient but not greater than necessary to effectuate the statutory sentencing factors under 18 U.S.C. § 3553(a).

## BACKGROUND

The defendant, Dean Edward Cheves, is a United States citizen and former U.S. Foreign Service Officer who served at the U.S. Embassy in Manila, Philippines. PSR at ¶ 19. He arrived on post in Manila in August 2017. *Id*. It was during this term assignment when the defendant met Minor 1 and Minor 2 online. The defendant ultimately used both his government-issued cell phone and his embassy-provided residence to engage in both online and in-person exploitation of the two girls he knew were minors. The defendant was sixty-two at the time he engaged in this conduct.

**I.      The defendant's sexual exploitation of Minor 2**

In or around December 2020, the defendant met Minor 2, then 15 years old, through an Internet dating application. PSR at ¶ 43. Minor 2 sent a message to the defendant telling him her date of birth and that she was a minor. *Id*. In his cell phone, the defendant logged Minor 2's date of birth in the notes section of her contact entry, including "18-" after her name. *Id*.

In January 2021, the defendant agreed to purchase "private" pictures from Minor 2. PSR at ¶ 43. The defendant paid Minor 2 $67 USD for images which depict Minor 2 engaged in sexually explicit conduct. *Id*.

In February 2021, while the defendant was at his embassy-provided residence in Manila, the defendant instructed Minor 2 via an online chat to make a video of herself masturbating. PSR at ¶ 44. Minor 2 told the defendant she was uncomfortable with this suggestion, and the defendant pushed her to "try it." *Id*. When Minor 2 suggested a different video, the defendant responded, "lol no thanks." *Id*. When Minor 2 suggested pictures instead, the defendant asked if they can be "naughty" and offered to send her a sample pose. *Id*. Later that day, Minor 2 sent the defendant pictures and videos, including images that showed her engaged in sexually explicit conduct—just as the defendant requested. *Id*.

The defendant induced Minor 2 to create more sexually explicit images in March 2021. PSR at ¶ 45. During an online chat from his embassy-provided residence, the defendant instructed Minor 2 to groom herself in a certain way for the next pictures. *Id*. The defendant also directed Minor 2 to take pictures while she touched her genitals and posed in a certain way. *Id*. The defendant sent Minor 2 money and Minor 2 sent the defendant a series of sexually explicit photos and videos, including photos and videos consistent with the grooming and poses the defendant requested. *Id*. In response, the defendant wrote that he "cant [sic] wait for [the victim] to grow up." *Id*.

## II.     The defendant's sexual exploitation of Minor 1

Shortly after he began communicating with Minor 2, the defendant met Minor 1 online. At first, the defendant and Minor 1 communicated via an Internet-based messing application, but later they met in person. PSR at ¶¶ 46-47.  Minor 1 was saved as a contact in the defendant's phone along with the notation "18-." *Id*. at ¶ 46. Early in these chats, after Minor 1 told the defendant she was 16 years old, the defendant told her she was "[o]lder than the others [he has] been chatting with" and that he had previously had sex with a 14-year-old in Brazil and had created images of the encounter. *Id*.[1] The defendant emphasized to Minor 1 the need for secrecy, telling her that he worked for the U.S. Embassy and that he needed to be "extra careful" because "[t]his kind of thing causes international incidents." *Id*.

On or about February 12, 2021, the defendant met Minor 1 in person for the first time. PSR at ¶ 47. The defendant had Minor 1 perform oral sex on him. *Id*. Then, on or about February 21, 2021, the defendant and Minor 1 met in person for a second time. *Id*. This time, the defendant took

---

[1] The defendant worked for the Department of State in Brazil between July 2011 and October 2014.  As of this filing, the government has been unable to identify the defendant's Brazilian victim.

Minor 1 to a short-term hotel in the Philippines, where they had sex. *Id*. The defendant recorded the sexual activity on his government-issued iPhone 11. *Id*. Afterward, the defendant sent these videos to Minor 1, telling her the videos would look good on a pornography site. *Id*. Minor 1 later reported these events to the Philippine National Police and U.S. law enforcement.

**III.     Procedural History**

On January 20, 2022, a federal grand jury in the Eastern District of Virginia returned a four count superseding indictment charging the defendant with two counts of engaging in illicit sexual conduct in foreign places, in violation of 18 U.S.C. § 2423(c) and (f)(3) (Counts 1 and 3), one count of coercion and enticement, in violation of 18 U.S.C. § 2422(b), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(A). PSR at ¶ 1. On October 24, 2022, the defendant entered a plea of guilty to Counts 1 and 3 of the superseding indictment. *See* Dkt. No. 68 ("Plea Agreement"). The illicit sexual conduct alleged in Counts 1 and 3 was production of child pornography.

**SENTENCING ANALYSIS**

**I.     Statutory Penalties and Guidelines Calculations**

The offense of engaging in illicit sexual conduct in foreign places carries a maximum sentence of 30 years' imprisonment. *See* 18 U.S.C. § 2423(c). Following any term of imprisonment, the defendant must be placed on supervised release for a term of at least 5 years up to a lifetime term. *See* 18 U.S.C. § 3583(k).

As this Court is aware, to determine the appropriate sentence, the Court must consult both the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). Although they are advisory, "a sentencing court is still required to 'consult [the] Guidelines and take them into account when sentencing.'" *United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006) (quoting *United States v.*

*Booke*r, 543 U.S. 220, 264 (2005)). Thus, a sentencing court must first calculate the applicable Guidelines range after making the appropriate findings of fact. *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Relying on that range as "the starting point and the initial benchmark," the sentencing court must then "consider all of the § 3553(a) factors" before imposing a sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Here, the PSR correctly calculated the total offense level for the defendant under the Guidelines as follows:

### Count 1: Engaging in Illicit Sexual Conduct in Foreign Places (Minor 1)

| Guideline | |
|---|---|
| Base offense level pursuant to the cross reference at U.S.S.G. § 2G1.3(c)(1). (U.S.S.G. §§ 2G2.1(a) and 2G1.3(c)(1)) | 32 |
| The offense involved the commission of a sexual act or sexual contact. (U.S.S.G. § 2G2.1(b)(2)(A)) | +2 |
| The defendant knowingly engaged in distribution. (U.S.S.G. § 2G2.1(b)(3)) | +2 |
| For the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved (A) the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage sexually explicit conduct; or (B) the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct. (U.S.S.G. § 2G2.1(b)(6)(B)) | +2 |
| **TOTAL OFFENSE LEVEL** | **38** |

### Count 3: Engaging in Illicit Sexual Conduct in Foreign Places (Minor 2)

| Guideline | |
|---|---|
| Base offense level pursuant to the cross reference at U.S.S.G. § 2G1.3(c)(1). (U.S.S.G. §§ 2G2.1(a) and 2G1.3(c)(1)) | 32 |
| The offense involved a minor who had (A) not attained the age of twelve years; or (B) attained the age of twelve years but not attained the age of sixteen years. (U.S.S.G. § 2G2.1(b)(1)(B)) | +2 |

| | |
|---|---|
| For the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved (A) the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage sexually explicit conduct; or (B) the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct. (U.S.S.G. § 2G2.1(b)(6)(B)) | +2 |
| **TOTAL OFFENSE LEVEL** | 36 |

PSR ¶¶ 56-71.

As explained in the PSR, the defendant's combined adjusted offense level, the Chapter 4 enhancement, and the acceptance of responsibility credit results in an offense level of 43. PSR at ¶¶ 75-78. Additionally, the defendant's Criminal History Category is correctly calculated as a I. PSR ¶ 82. This calculation results in a Guidelines range of life, or, as reflected in the PSR, a range of 720 months' imprisonment, reflecting the statutory maximum for each of the counts if run consecutively. PSR, Part D. Under U.S.S.G § 5G1.2, if the statutory maximum is less than the minimum of the Guidelines range, as it is here, the statutory maximum is the Guidelines sentence. Title 18 U.S.C. § 2423(c) carries a statutory maximum of 30 years' imprisonment. Accordingly, if run consecutively, the statutory maximum sentence for Counts 1 and 3 is a term of 60 years' (720 months) imprisonment.

II.   **The Defendant's Objections to the PSR**

The defendant filed objections to the PSR, including objections to: (1) the description of his offense conduct; (2) certain facts related to his history and characteristics; (3) the total offense level; and (4) application of USSG § 5G1.2(d). None of these objections have merit and should be overruled.

### A. The defendant's objections to the offense conduct

The majority of the defendant's objections to the PSR's description of the offense conduct relate to disclosures made by the victims during their respective interviews with law enforcement. Specifically, the defendant objects to inclusion of certain parts of paragraphs 21-22, 27, and 38, which all relay information provided by Minors 1 and 2 during their interviews about the offenses. *See* Def. Objs. at 1-2. The government concurs with the PSR author's decision to reject the defendant's objections on these grounds. These interviews, in part, form the basis of the charges against the defendant—the charges to which he has entered pleas of guilty. Many of the victims' statements have been directly corroborated by other evidence in the case, including the transcripts of their chats and the images and videos recovered. They therefore have "some indicia of reliability, which is all that's required of evidence included in the PSR. *See United States v. Powell*, 650 F.3d 388, 393-94 (4th Cir. 2011) (holding that due process requires sentencing courts rely only on evidence with some minimal level of reliability and the defendant bears the burden to show that the information in the PSR is unreliable). Moreover, the PSR makes clear that this information is part of the victim's disclosure, and not necessarily a fact that is part of the specific conduct to which the defendant pled guilty. Finally, none of these objections affect the calculation of the Guidelines imprisonment range applicable to the defendant. The defendant has offered no reason to believe these statements are unreliable, and his objections must therefore be overruled.

More problematically, the defendant objects to paragraph 29 of the PSR and denies having a sexual relationship with a minor in Brazil. However, the same information is contained in paragraph 5 of the Statement of Facts, which the defendant signed and agreed to when he entered his guilty pleas. *See* PSR at ¶ 46 (incorporating Statement of Facts). There, the defendant admitted that he told Minor 1 he had previously had sex with a 14-year-old in Brazil, took her to a sex motel,

and took pictures of his sexual encounter with her. *See* Dkt. No. 69, at ¶ 5. Arguably, the Statement of Facts includes more information about this exchange than paragraph 29 of the PSR. Because the defendant himself made the statement in question and then subsequently admitted to this fact, the statement bears the required indicia of reliability, and the Court should overrule the defendant's objection.

### B. The defendant's objection to the total offense level

The defendant objects to the computation of the total offense level of 43 but does not provide additional detail about the basis for this objection. *See* Def. Objs. at 3. Notably, the offense level computation in the PSR is consistent with the total offense level reflected in the signed Plea Agreement, considering the parties' Guidelines stipulations. Likewise, the PSR author noted that in the Plea Agreement, the defendant agreed to the exact guideline calculations that were applied here. *See* Dkt. No. 76, at 29 n. 2 ("Addendum to the PSR"). Regardless, because the defendant has not provided any argument or authority for his unsupported objection, it should be overruled.

### C. The defendant's objection to application of USSG § 5G1.2(d)

The defendant argues that USSG § 5G1.2(d) does not apply. "In the case of multiple counts of conviction, the guidelines instruct that if the total punishment mandated by the guidelines exceeds the highest statutory maximum, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment." *United States v. White*, 238 F.3d 537, 543 (4th Cir. 2001) (citing § 5G1.2(d)). Therefore, if the Court determines that the appropriate sentence is greater than 360 months (the statutory maximum on a single count), then "§ 5G1.2(d) requires the imposition of consecutive terms on each count of conviction until the guideline punishment is achieved." *Id*.

The defendant is correct that § 5G1.2(d) may not ultimately apply in this case. If the defendant is sentenced to fewer than 360 months, then his sentences on the two counts will run concurrently. *See* § 5G1.2(c) ("If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law."). However, if the defendant is sentenced to a total punishment greater than 360 months, his sentences must run consecutively. Therefore, the defendant's objection to application of § 5G1.2(d) should be overruled.

**D.     The defendant's objections to the offender characteristics section**

The defendant seeks to correct various offender characteristics recounted by the PSR, specifically paragraphs 91, 93-95, 97, 99, 105, and 114. *See* Def. Objs. at 2-3. The government does not have the ability to independently verify the accuracy of many of the objections submitted in this section. Nevertheless, to the extent they are factually accurate, and without conceding the relevance of any of them to determination of the appropriate sentence to be imposed, the government does not oppose corresponding revisions to the PSR.

**III.    Section 3553(a) Factors**

In this case, careful consideration of the § 3553(a) factors demonstrates that a significant sentence of imprisonment—followed by a lifetime term of supervised release, as well as restitution, forfeiture, and the special assessments discussed below—is the appropriate sentence based on the defendant's offenses. Of paramount importance in this case are: (1) the nature and circumstances of the offenses, (2) the need for the sentence to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment for the offenses, and (3) the need to afford adequate deterrence and to protect the public from further crimes of the defendant.

### A.     The nature, circumstances, and seriousness of the defendant's offense

The defendant's conduct was abhorrent. He sought out minors online and exploited them for his sexual gratification. In the case of Minor 2, he pushed her to create sexually explicit images that she told him made her feel uncomfortable. He had her groom herself and pose in certain ways so he could control the visuals he would get from her. He exploited her youth and vulnerability, buying child sexual abuse material from her when she needed money for dental procedures. *See* PSR at ¶ 43. All the while, the defendant was living in Manila, at an embassy-provided residence, and representing the United States government.

In the case of Minor 1, the defendant carefully developed his relationship with her online, grooming her in part by telling her about his previous sexual encounter with a 14-year old in Brazil. He then met up with her repeatedly for the purpose of having sex. Moreover, he ensured this abuse would be captured indefinitely when he filmed himself having sex with her (using a government-issued cell phone, no less). He then treated the abuse with casual disregard, talking to her about it as if they were just making a movie, telling her that he fixed the exposure, the video looked good in slow motion, and even that his recording of his criminal sexual abuse of a minor would be a good video for a pornography website. Again, the defendant was in Manila and had access to Minor 1 because he was serving on behalf of the United States government. The defendant exploited this position, going so far as to tell Minor 1 that he worked for the U.S. Embassy and even sharing his exact job title.

The defendant's crimes have resulted in substantial harm. The defendant's conduct altered Minor 1's life trajectory and had devastating effects on her mental health. In her statement to the Court, Minor 1 writes (in part):

> *The impact of his crime has severely affected my mental health; I am unable to function as I normally would. I went from a top student, to a thrice*

> *drop-out with no prospects. My depression as a result of the crime against me has rendered me a living corpse.*
>
> *I am not from a rich family, we could not afford therapy nor to have me continue at my then-school. My depression continued to affect my daily life and my relationship with the people around me. I lost all my friends. I lost the support of my family. And worst of all; I lost my future. I have been ostracized and labeled as a disappointment and as a failure. I lost my scholarship nominally worth 5 million pesos, and with that, the possibility of ever living up to the potential I displayed…*
>
> *I scrub my skin until it turns raw to get rid of his touch. I scratch at my own skin and pull out my hair. I go through periods of intense social withdrawal. The mere scent of cigarettes conjures bad memories of the room where he defiled me. I am unable to sleep, unable to eat, unable to properly socialize, whenever all the emotions and memories come flooding back to me. My brief moments of happiness are overshadowed by the lengthy court case and unresolved issues that the crime has left me with.*

"There can be no keener revelation of a society's soul than the way in which it treats its children." *Cunningham*, 680 F. Supp. 2d at 847 (attributing quote to Nelson Mandela). Sadly, "[t]he exploitation of children is pandemic. The most vulnerable members of our society have been exploited and discarded." *Id.* at 848 (citation omitted). To reflect the seriousness of this crime, those who participate in this evil must be punished severely. *See United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (citing a 2003 legislative enactment as "ample evidence of Congress's intent that offenses involving child pornography be treated severely"). In this case, only a significant sentence will reflect the seriousness of the crime. The defendant's victims were vulnerable children whom he exploited and abused for his sexual gratification. The defendant made a record of his abuse in the photos and videos that he created of his victims, who were profoundly harmed by his crimes.

### B. The need to promote respect for the law and to afford adequate deterrence to criminal conduct

A significant sentence of imprisonment is warranted to deter the defendant and others from engaging in this conduct in the future. As the evidence demonstrates, the defendant went online and found multiple minor victims whom he sexually exploited. He produced child sexual abuse material of both minor victims, and in the case of Minor 1, engaged in sex with her on two occasions. The defendant boasted to Minor 1 that he had had sex with a minor before. Importantly, the defendant committed these offenses while representing the United States government in Manila. A significant sentence is necessary to deter the defendant from engaging in this conduct again.

More broadly, a significant sentence is warranted here to deter other child sex offenders from engaging in similar behavior, particularly those who would do so abroad, where Congress has recognized that minors may be even more susceptible to exploitation and abuse. Accordingly, the government respectfully requests that the Court impose a significant sentence that both deters the defendant from continuing this pattern of conduct upon his release and sends the message to other offenders who might seek to exploit children in a similar fashion, that the sexual abuse of children will not be tolerated.

### C. The need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct

The defendant used two minors to produce child sexual abuse material, but because his crimes were committed while he was representing the United States abroad, the government had more limited charging options than had he committed his crimes domestically. Section 2423(c) criminalizes engaging in illicit sexual conduct in foreign places. "Illicit sexual conduct" covers a wide range of behaviors, but here, the defendant pleaded guilty to engaging in the illicit sexual

conduct of production of child pornography—recognized by Congress to be some of the most serious misconduct. Had the defendant committed these offenses while in United States, he would have been charged with violations of 18 U.S.C. § 2251(a) and (e) (sexual exploitation of children), which criminalizes using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. Section 2251(a) and (e) carries a mandatory minimum sentence of 15 years' imprisonment. The government submits that this is the appropriate floor for imposing the defendant's sentence, in the interest of avoiding unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as directed by § 3553(a)(6). That the defendant committed his crimes abroad, while serving in a position of trust, should not be a factor in mitigation of his sentence. Moreover, as discussed, the defendant's conduct is extremely serious, comprising multiple victims and repeated in-personal sexual abuse of a child. The government believes the Court should take these aggravating factors into account in imposing a significant sentence.

### IV. Supervised Release

The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(k), the authorized term of supervised release for the defendant's offense is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See, e.g.*, H.R. Rep. No. 107-527, at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes" and that "the recidivism rates do not appreciably

decline as offenders age"). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement), and the Fourth Circuit has observed that § 3583(k) and § 5D1.2(b) jointly "reflect[] the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *Morace*, 594 F.3d at 351 (citations omitted).

Based on an assessment of these factors, the United States requests that the Court impose a lifetime of supervised release with the conditions of supervision described in 18 U.S.C. § 3583(d) for felons required to register under the Sex Offender Registration and Notification Act and those described in U.S.S.G. § 5D1.3(d)(7) for sex offenders. Given the defendant's sexual interest in children, as well as his sexual abuse of multiple minor victims, a lifetime term of supervision is the only effective means to mitigate as much as possible the risk that he will reoffend, and also to provide him with steady access to the treatment and monitoring he will clearly require, if released into the community.

## V. Special Assessments Under the Justice for Victims of Trafficking Act (JVTA) & the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA)

On December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act. The Act instructs that, in addition to any restitution or other special assessment, courts "shall assess . . . not more than $35,000 on any person convicted of any other [non-possession] offense for trafficking in child pornography; and not more than $50,000 on any person convicted of a child pornography production offense." 18 U.S.C. §§ 2259A(a)(2) & (a)(3). Assessments collected under this statute are deposited in the Child Pornography Victims Reserve, which provides monetary assistance to victims of trafficking in child pornography, see §§ 2259(d) & 2259B, and shall be paid in full after any special assessment under § 3013 and any restitution to victims of the defendant's offense, *see* § 2259A(d)(2). In determining the amount to be assessed

under § 2259A, courts should consider the sentencing factors set forth in § 3553(a) and the guidance in § 3572 for the imposition of fines. § 2259A(c). The United States respectfully requests that the Court impose a reasonable special assessment under § 2259A, in addition to the $200 mandatory special assessment for his felony convictions pursuant to 18 U.S.C. § 3013.

Additionally, under the Justice for Victims of Trafficking Act, courts "shall assess an amount of $5,000 on any non-indigent person" convicted of certain enumerated offenses, including engaging in illicit sexual conduct in foreign places. *See* 18 U.S.C. § 3014. The United States respectfully requests that the Court impose an assessment of $5,000 for the defendant's convictions pursuant to 18 U.S.C. § 3014.

## VI. Restitution

Pursuant to 18 U.S.C. §§ 2259 and 3663, the defendant must pay restitution in the "full amount of the victims' losses." Additionally, as part of the plea agreement entered into by the parties, the defendant has agreed that should either victim submit a restitution request prior to sentencing, he will pay not less than $3,000, and up to $10,000, per victim, within 90 days of sentencing. PSR ¶ 11. The defendant further agreed that restitution is mandatory under § 2429. *Id.*

Minor 1 has requested restitution. Therefore, consistent with the terms of the plea agreement, the government submits that the defendant must pay restitution to Minor 1 in the amount of $4,248, reflecting the cost associated with future therapy.

The government has not received a restitution request from Minor 2.

## VII. Forfeiture

The United States submitted a consent order for forfeiture, signed by the defendant and his counsel, during the plea agreement hearing. *See* Dkt. No. 70. The order was signed by the Court the same day.

## CONCLUSION

For the reasons above, the United States respectfully requests that the Court impose a significant sentence, a lifetime of supervised release, $4,248 in restitution to Minor 1, a $200 special assessment under § 3013, a $5,000 special assessment under § 3014, and a reasonable special assessment under § 2429.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: March 10, 2023     By:     _____/s/_____
Lauren Halper
Zoe Bedell
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Email: lauren.halper@usdoj.gov

Gwendelynn Bills
Trial Attorney
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue N.W.
Washington, D.C. 20005
Tel: 202-514-5780
Email: Gwendelynn.E.Bills@usdoj.gov